# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| NUVERRA ENVIRONMENTAL SOLUTIONS, INC., *et al.*, | : | Case No. 17-10949-KJC |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| DAVID HARGREAVES, | : | Civ. No. 17-1024-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| NUVERRA ENVIRONMENTAL SOLUTIONS, INC., *et al.*, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM ORDER

Before the Court is Appellant's Emergency Motion for Stay of Order Confirming the Amended Prepackaged Plans of Reorganization of Nuverra Environmental Solutions, Inc. and its Affiliated Debtors Pending Appeal (D.I. 3) and related Motion to Expedite (D.I. 4), seeking a stay pending appeal of a July 25, 2017 order by the Bankruptcy Court (D.I. 1-1) ("Confirmation Order"). Debtors and the Official Committee of Unsecured Creditors have each filed briefs in opposition. (D.I. 18, 19). For the reasons set forth below, the Motion for Stay is denied.

1. **Background.** The following facts appear to be undisputed. The Confirmation Order approved a plan of reorganization pursuant to which the Debtors' secured creditors will not receive 100% recovery on their secured claims. Unsecured creditors are "out of the money" with respect to any recovery in this case because their claims sit behind over $500 million of secured claims in a company that has an uncontroverted value of $300 million. (B.D.I. 363 at 4:4-8).[1] To enable the business to reorganize, secured creditors made a "gift" under the plan to general unsecured creditors who would otherwise receive no distribution under the Bankruptcy Code's priority scheme.

---

[1] The docket of the Chapter 11 cases, captioned *In re Nuverra Environmental Solutions, Inc.*, No. 17-10949 (KJC) (Bankr. D. Del.), is cited herein as "B.D.I. __."

2. Despite the fact that unsecured creditors would receive no distribution absent the gift, Appellant has appealed the Confirmation Order based on the fact that the plan places general unsecured claims of the same priority into two separate classes and provides disparate treatment. Class A6, comprised of holders of 9.875% unsecured senior notes due 2018 ("2018 Notes"), will receive an approximate 4%-6% recovery on account of their claims by virtue of the gift. Class A7, on the other hand, comprised of trade and other creditors whose claims arise from the Debtors' day to day operations, will receive a 100% recovery by virtue of the gift. Appellant is a holder of approximately $450,000 of the 2018 Notes, or 1% of the claims in Class A6. Class A6 voted to reject the plan,[2] while Class A7 voted to accept it. Because the plan is nonconsensual, Debtors had the burden of "show[ing] that the plan meets the additional requirements of § 1129(b), including the requirements that the plan does not unfairly discriminate against dissenting classes and the treatment of the dissenting classes is fair and equitable." *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003). These requirements were addressed in the Debtors' confirmation brief and declaration in support. (B.D.I. 302, 338).

3. Appellant was the sole objector at the hearing on plan confirmation and argued, *inter alia*, that the plan: improperly classified his claim separately from other general unsecured claims (*see* B.D.I. 290 at 6-7); unfairly discriminated against Class A6 (*see id.* at 7-11); and violated the requirement that a nonconsensual plan be fair and equitable (*see id* at 11-12). Following argument on July 21, 2017 (B.D.I. 362), the Bankruptcy Court took the matter under advisement and made a bench ruling via telephonic hearing on July 24, 2017, overruling the objection and confirming the plan (B.D.I. 363). The Bankruptcy Court determined that separate classification of trade creditors

---

[2] Despite having approximately 80% in number of holders vote to accept the plan, the plan failed to gain the support of 50% in dollar amount. Under section 1126(c) of the Bankruptcy Code, "[a] class of claims has accepted a plan if such plan has been accepted by creditors that . . . hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c).

2

and noteholders was reasonable on the basis that trade creditors were critical to the success of the reorganized debtors. (B.D.I. 363 at 5:5-6:24). Judge Carey applied the Markell test[3] and determined that, while the disparate treatment of the two classes raised a presumption of unfair discrimination, that presumption was rebutted because class A6 is "indisputably out of the money and not, otherwise, entitled to any distribution under the bankruptcy code's priority scheme and provided further that the proposed classification and treatment of the unsecured creditors fosters a reorganization of these debtors." (*Id.* at 8:25-9:3). The Bankruptcy Court also rejected Appellant's argument that the gift was from estate property, violated the absolute priority rule, and thus the plan was not "fair and equitable." (*Id.* at 10:8-12:12). The Bankruptcy Court ultimately determined that its decision was consistent with leading cases and approved the plan. Appellant filed a timely notice of appeal on July 25, 2017. (D.I. 1).

4. **Jurisdiction.** Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

5. **Discussion.** "The granting of a motion for stay pending appeal is discretionary with the court." *See In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellant bears the burden of proving that a stay of the Confirmation Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3)

---

[3] Under the Markell test (named for a professor, not for a case), a rebuttable presumption of unfair discrimination arises:
    when there is (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.
*In re Tribune Co.*, 472 B.R. 223, 241-42 (Bankr. D. Del. 2012) (adopting Markell test).

3

whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) "a strong showing" of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citations omitted). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

6. ***Likelihood of success on the merits.*** As to the first factor, Appellant has not met his burden of making "a strong showing" that he is likely to succeed on the merits. According to the Motion for Stay, Appellant's argument on appeal is that, having determined under the Markell test that the disparate treatment of Classes A6 and A7 gave rise to a presumption of unfair discrimination, the Bankruptcy Court erred in finding that the presumption was rebutted and the gift "constitute[d] no unfair discrimination" because "class A6 was indisputably out of the money and not, otherwise, entitled to any distribution under the Bankruptcy Code's priority scheme and provided further that the proposed classification and treatment of other unsecured creditors fosters a reorganization of these debtors." (D.I. 3 at 6). Appellant argues that the Bankruptcy Court's reliance on the gifting doctrine was error because "[g]ifting is simply wrong as a matter of law." (*Id.* at 7). In support, Appellant argues that, in *Armstrong World Industries, Inc.*, 432 F.3d 502 (3d Cir. 2005), the Third Circuit held that "vertical class skipping" – the gifting of a distribution from a

4

senior class of creditors in a manner that skips over an intermediary junior class, such that it violates the absolute priority rule – "is not allowed if the gift is property of the estate." (*Id.*) "By the same token," Appellant argues, horizontal class skipping – preferring one class of creditors over another class of creditors with claims of the same priority, as here – should be impermissible also: "gifting in violation of the requirement that a class not be unfairly discriminated against should not be allowed if the 'gift' is property of the estate." (*Id.*) Appellant is unlikely to succeed on the merits of this argument for several reasons.

7. First, although the Bankruptcy Court cited relevant case law from this district in support its ruling, Appellant fails to address those cases in his Motion for Stay or explain how the Bankruptcy Court erred in relying on those cases. In determining that the plan did not unfairly discriminate, the Bankruptcy Court relied on *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001). (*See* B.D.I. 363 at 10:12-12:12). The bankruptcy court in *Genesis* confirmed a similar plan, under which secured lenders made a gift from their own recovery to certain, but not all, classes of general unsecured creditors, premised upon the assumption that even if senior lenders received all the debt and equity distributed under the plan, the senior lenders' claims still would not be satisfied in full. *See Genesis*, 266 B.R. at 602. Under the plan in that case, secured creditors did not make a gift to certain classes of general unsecured creditors (*e.g.*, creditors holding punitive damages claims), and those creditors objected to plan confirmation on the basis of unfair discrimination. While the disparate treatment gave rise to presumption of unfair discrimination under the Markell test, the *Genesis* court ultimately concluded that the presumption was rebutted:

> [T]he recovery by Classes G4 and M4 of a dividend in the form of New Common Stock and Warrants is based on the agreement of the Senior Lenders to allocate a portion of the value they would have otherwise received to Classes G4 and G5. The disparate treatment ... is a permissible allocation by the secured creditors of a portion of the distribution to which they would otherwise be entitled, rather than unfair discrimination against Classes G7 and M7 by the proponents of the plan.

5

*Id.* at 612. Thus, *Genesis* held that the presumption of unfair discrimination is rebutted where the distribution is based on the agreement of senior lenders to allocate a portion of the value to which they would have otherwise been entitled under the Bankruptcy Code. The Bankruptcy Court's ruling here is consistent with *Genesis,* and Appellant points to no differences between these cases that requires a different outcome or would make his success on appeal likely.

8. Appellant's reliance on the Third Circuit's holdings in *Armstrong* and *ICL* is misplaced. Under the proposed plan in *Armstrong*, an unsecured creditor class would receive and automatically transfer warrants to purchase common stock (property of the estate) to a class of equity holders, despite the fact that the plan did not provide full recovery for all unsecured creditors in classes senior to the equity holders. *See Armstrong*, 432 F.3d at 514. The Third Circuit determined that vertical class skipping gifts like these violated the absolute priority rule, which is codified as part of the "fair and equitable" requirements of section 1129(b). "Under the statute, a plan is fair and equitable with respect to an impaired, dissenting class of unsecured claims if (1) it pays the class's claims in full, or if (2) it does not allow holders of any junior claims or interests to receive or retain any property under the plan 'on account of' such claims or interests." *Id.* at 512 (citing 11 U.S.C. § 1129(b)(2)(B)(i)-(ii). The *Armstrong* court concluded that the plain language of the statute makes clear that a plan cannot give property to junior claimants over the objection of a more senior class that is impaired. *Id.* at 513. In the context of gifts, the Third Circuit noted that "section 1129 was at least designed to address 'give-up' situations where a senior class gave property to a class junior to the dissenting class." *Id.* Unlike *Armstrong*, the gift at issue here is a voluntary carve out from the senior lender's liens, and the plan does not involve vertical class skipping as it does not provide a distribution to a class junior to the dissenting class – Class A6.

9. Appellant further cites the Third Circuit's ruling in *ICL* – a case decided in the context of a settlement agreement in connection with an asset sale, not a plan of reorganization – for

6

the rule that gifts are permissible only if they are not made from estate property. *In re ICL Holding Co., Inc.*, 802 F.3d 547 (3d Cir. 2015). While Appellant appears to argue that the gift in this case was made from estate property and was thus impermissible (*see* D.I. 3 at 7), Appellant provides no support for his argument. As noted above, a similar gift from senior lenders to certain, but not all, classes of general unsecured creditors was approved in *Genesis*. As the Bankruptcy Court noted in its ruling, *Armstrong* distinguished the very similar "arrangement in *Genesis* as an ordinary carve-out of the senior creditor's lien for the junior claimant's benefit" but did not reject it. (*See* B.D.I. 363 at 11:8-12:9).[4] The Bankruptcy Court's ruling is consistent with these cases, and Appellant offers no reason why he is likely to succeed on appeal in establishing that the gift in this case was from estate property or otherwise offends the absolute priority rule.

10. Finally, Appellant relies on *Sentry*, a case outside this circuit, in which the Bankruptcy Court for the Southern District of Texas held that a secured creditor should never be permitted to "decide which creditors get paid and how much those creditors get paid." *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 865 (Bankr. S.D. Tex. 2001). Because Appellant has failed to address case law in this district to the contrary, his reliance on a case outside this circuit does not establish a likelihood of success on appeal.

11. ***Irreparable harm.*** Appellant has failed to establish that he would suffer irreparable harm in the absence of a stay. To do so, Appellant must establish a resulting injury "that cannot be

---

[4] In *Armstrong*, this Court distinguished *Genesis* on the facts as involving a distribution of property subject to the senior creditor's liens that was "carved out" voluntarily for junior claimants. *See In re Armstrong World Indus.*, 320 B.R. 523, 539 (D. Del. 2005). The Third Circuit adopted this reading of that case, characterizing the *Genesis* decision as having allowed a secured creditor to "(1) give up their proceeds under the reorganization plan to holders of unsecured and subordinated claims, without including the holders of punitive damages in the arrangement, and (2) allocate part of their value under the plan to the debtor's officers and directors as an employment incentive package." *See id.* at 513-14. *See also In re World Health Alternatives, Inc.*, 344 B.R. 291, 298-99 (Bankr. D. Del. 2006) (discussing *Armstrong* and *Genesis* and concluding "[s]uch a carve out does not offend the absolute priority rule or the Bankruptcy Code's distribution scheme because the property belongs to the secured creditor – not the estate").

7

redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Appellant merely argues that if no stay is granted, and the plan is consummated, he may be barred from arguing the merits of his appeal based on equitable mootness. (*See* D.I. 3 at 3, 8). The possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay.[5] If the plan goes effective, Appellant will be entitled to the same distribution as other Class A6 creditors, and Appellant does not argue that he ultimately is entitled to the full payment of his claim.[6] Debtors argue the company's valuation is uncontroverted, and it is undisputed that unsecured creditors are entitled to no distribution under the Bankruptcy Code. (*See* D.I. 19 at 15). Thus, it appears that even if Appellant succeeded on appeal, unsecured creditors would receive no value under a new proposed plan or in a liquidation. (*See id.*) The court agrees with Debtors that "because there is no value that Appellant is entitled to seek or likely to obtain in this appeal, Appellant cannot establish that he will suffer irreparable harm." (*Id.*)

12. Having evaluated Appellant's likelihood of success on the merits and irreparable harm absent a stay, and having determined that Appellant has failed to carry his burden as to either element, the Court is satisfied no further analysis is required. *See Revel AC*, 802 F.3d at 571.

13. **Conclusion.** The Bankruptcy Court's ruling is consistent with existing precedent, and Appellant has failed to establish that he will suffer irreparable harm in absence of a stay.

---

[5] This alleged harm would be purely economic, and, as such, it also would not satisfy the requirement *See e.g., Regal Ware, Inc. v. Global Home Prods., LLC*, 2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006) ("[T]he fact that [the movant's] appeal could be rendered moot . . . does not in and of itself constitute irreparable harm."); *In re Tribune Co.*, 477 B.R. 465, 477 n.12 (Bankr. D. Del. 2012) ("[t]he possibility of equitable mootness, while a factor here for irreparable harm, is not dispositive of the ultimate question of whether to grant a stay pending appeal.")

[6] *See Revel AC*, 802 F.3d at 572 ("[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless "the potential economic loss is so great as to threaten the existence of the movant's business.")

NOW, THEREFORE, it is HEREBY ORDERED that the Motion for Stay (D.I. 3) and Motion to Expedite (D.I. 4) are DENIED.

Entered this __3__ day of August, 2017.

_____
United States District Judge